UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAYODE OSENI,

                              Petitioner,

     -against-                                    No. 16-CV-8743 (NSR)

WILLIAM S. MAHONEY, SENIOR PAROLE              OPINION & ORDER
OFFICER, N.Y.S. D.O.C.C.S.

                              Respondent(s).

NELSON S. ROMÁN, United States District Judge:

*Pro se* Petitioner, Kayode Oseni ("Petitioner"), commenced this proceeding pursuant to

28 U.S.C. § 2254, *writ of habeas corpus*, challenging the lawfulness of his New York state court

judgment of conviction following his guilty plea to the crime of robbery in the first degree (N.Y.

P.L. § 160.15(2)). (ECF No. 1, the "Petition.")  Respondent opposed the Petition. (ECF Nos. 8,

9.) Petitioner filed a reply soon thereafter. (ECF Nos. 21- 23.) Pursuant to 28 U.S.C. § 636(b) and

Federal Rule of Civil Procedure 72(b), this matter was referred to Magistrate Judge Andrew E.

Krause ("MJ Krause") to issue a report and recommendation ("R&R"). On November 1, 2022,

MJ Krause issued an R&R recommending that the Court deny the petition.  (ECF No. 27.) On

November 15, 2022, Petitioner filed an objection to the R&R. (ECF No. 30.) For the following

reasons, the Court adopts MJ Krause's R&R in its entirety and the petition is deemed

DISMISSED.

## BACKGROUND

The following facts and  procedural history are taken from the petition, court filings, and the

motion papers.

**Factual Background**

On the evening of January 21, 2009, Petitioner, while acting in concert with Kamaal Burrowes ("Burrowes") and Zahquan Goode ("Goode"), forcibly stole property from a Blockbuster Video store in Eastchester, New York. (ECF No. 9, Resp. Aff. at 2; ECF No. 10, Resp. Mem., Ex. 4 ("Plea Tr.") at 13.2.)  Petitioner and Goode, while wearing ski masks, entered the store armed with a loaded 22-caliber semi-automatic handgun and removed property, consisting of cash and a digital camera. *Id.* As Petitioner and Goode were in the store, Burrowes waited outside in a dark colored Acura Integra (the "Integra"), the getaway vehicle. *Id.* Once Petitioner and Goode left the store, they entered the vehicle and fled the area. *Id.*

Police Officer Jorge Lage ("Officer Lage"), of the Eastchester Police Department, who was in an unmarked police vehicle in the area of the Blockbuster store, responded to a 911 call of an armed robbery involving a dark colored vehicle matching the description of the Integra. *Id.* The 911 operator also provided the vehicle's direction of flight. *Id.* Within minutes of the 911 transmission, Officer Lage observed and stopped Petitioner's vehicle which matched the dispatcher's description. *Id.* At the time of Officer Lage's vehicle stop, it was occupied by Petitioner, Burrowes, and Goode. *Id.* An immediate search of the vehicle led to the recovery of two ski masks, a loaded semi-automatic handgun, money, and a digital camera, similar to the one taken from the Blockbuster store. *Id.* Petitioner was eighteen (18) years old at the time of the incident and had no prior criminal history. *Id.*

**Procedural History**

On January 22, 2009, Petitioner was arraigned on a felony complaint filed in the Town Court of Eastchester, N.Y. and charged with robbery in the first degree (N.Y. Penal Law

§160.15(2)). (Resp. Aff. at 3.) On February 3, 2009, Petitioner once again appeared in the Town Court of Eastchester, with his attorney, Joanna Otaiza, Esq., for a felony hearing. *Id.*; (*see* Resp. Mem., Ex. 2 (Felony hearing).) Upon completion of the hearing, the court concluded that the prosecution presented sufficient evidence to support a finding of reasonable cause to believe that Petitioner committed a felony and ordered that he be detained pending grand jury action. (Resp. Aff. at 4; Resp. Mem., Ex. 2 at 36-37.) Petitioner's attorney requested that he be held (or relocated) to a youth shelter. However, the application was denied by the court. (Resp. Mem., Ex. 1.)

Petitioner was subsequently indicted in New York State Supreme Court, Westchester County ("Westchester Supreme Court"), Indictment Number 09-0210-02, and charged with aiding, abetting, and acting in concert with Burrowes and Goode in committing the crimes of robbery in the first degree (N.Y. Penal Law §§ 160.15(2),(4)) (two counts), robbery in the second degree (N.Y. Penal Law § 160.10(1)), criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03(1)(b)), and criminal possession of stolen property in the fifth degree (N.Y. Penal Law § 165.40). (Resp. Mem., Ex. 3.) On April 2, 2009, Petitioner appeared in Westchester Supreme Court where he was arraigned on the indictment and entered a not guilty plea. (Resp. Aff. at 4.) Petitioner subsequently filed a motion seeking, *inter alia*, to suppress evidence obtained following the vehicle stop and his arrest. *Id.* The court granted Petitioner's motion to the extent of setting the matter down for a *Mapp/Dunaway* hearing.[1] *Id.* at 5. Upon completion of the hearing, the court denied Petitioner's motion to suppress evidence. (*See* ECF

---

[1] The purpose of a *Mapp/Dunaway* hearing is to develop the record concerning the circumstances surrounding the gathering of evidence obtained by the police during a search and seizure of a defendant. *People v. Mabeus*, 63 A.D.3d 1447 (A.D. 3rd Dept. 2009).

No. 13 ("Pet. Reply Attachment 5").)

On March 23, 2010, Goode pled guilty to robbery in the first degree and criminal possession of a weapon in the second degree and was subsequently sentenced to concurrent determinate terms of imprisonment of seven years, along with five years of post-release supervision. (Resp. Aff. at 6.) On April 13, 2010, Burrowes pled guilty to robbery in the first degree and was sentenced to a determinate term of imprisonment of five years, along with five years of post-release supervision.[2] *Id.* On April 20, 2010, Petitioner pled guilty to one count of robbery in the first degree. (*See generally* Resp. Mem., Ex. 4.) At the plea hearing, the court informed Petitioner that since he was not a U.S. citizen, a felony plea would result in Petitioner's deportation from the United States. *Id*. Petitioner confirmed to the court that he was informed of immigration consequence of his plea, was aware of the potential consequences, and that he had discussed it thoroughly with his attorney. *Id.* at 6-7. Petitioner also stated that he was satisfied with the legal representation he had received. *Id*. at 7. Petitioner likewise confirmed that he understood that as a condition of his plea, he was waiving his right to appeal his conviction and sentence to the Appellate Division, Second Department, and that he had discussed the applicable waivers with his attorney. *Id.* at 12. More specifically, Petitioner informed the court that he had reviewed the written waiver of appeal with his attorney, that he understood its contents, and that he understood that in signing the waiver of appeal he was giving up any right to appeal "that has anything to do with this case, except for matters relating to the legality of the sentence, the length of the sentence, or a constitutional issue." *Id.* at 14. Lastly, Petitioner once again confirmed that

---

[2] Petitioner does not challenge the length of his sentence, which was purported the mandatory minium, and thus, within the statutorily permissible range.

he understood the immigration consequences of his guilty plea which could result in his deportation from the United States. *Id.* at 13. A review of the allocution plea minutes does not reflect any hesitation on the part of Petitioner to proceed with his plea nor is there an indication that he may have misunderstood any information received from his attorney, the Court, or his review of documents received during the proceeding. On June 18, 2010, Petitioner was sentenced in Westchester Supreme Court, to a determinate term of imprisonment of five years and three years of post-release supervision.[3] (Resp. Mem.,  Ex. 5.)

On July 30, 2012, Petitioner, directly appealed his judgment of conviction. (Resp. Mem., Ex. 6.) In his appeal, Petitioner asserted three claims: 1. Petitioner's waiver of appeal was unenforceable because his guilty plea was illegal and the waiver was "unknowing, involuntary, and unintelligent"; 2. Petitioner's guilty plea was not voluntary, knowing, and intelligent because neither the prosecutor nor the trial court told Petitioner about the minimum sentence he faced if convicted; and 3. the trial court erred in denying his motion seeking to suppress physical evidence that was found following his arrest as the result of a warrantless search. *Id*. On June 12, 2013, New York's intermediate appellate court, the Appellate Division, Second Department ("Appellate Division"), affirmed Petitioner's conviction, concluding, *inter alia*, that 1. the record demonstrates that Petitioner "knowingly, voluntarily, and intelligently waived his right to appeal;" 2. his valid waiver precluded appellate review of  Petitioner's challenge to the suppression determination; and 3. Petitioner could not challenge whether his guilty plea was entered knowingly, voluntarily, and intelligently because he failed to preserve such issue for

---

[3] Petitioner does not challenge the length of his sentence, which was purported the mandatory minium, and thus, within the statutorily permissible range.

appellate review.[4] *People v. Oseni*, 107 A.D.3d 829 (A.D. 2d Dept. 2013).  Petitioner sought leave to appeal to New York States's highest court, the New York Court of Appeals, but his application was denied. *People v. Oseni*, 21 N.Y.3d 1044 (2013).

On January 8, 2014, Petitioner filed a petition for a *writ of error coram nobis* with the Appellate Division, wherein he sought to vacate his conviction on the basis of ineffective assistance of appellate counsel due to counsel's failure to file a suborning of perjury claim against the prosecutor contending that the police officers' testimony during the suppression hearing was "materially false." (*See* Resp. Mem., Exh. 14, *writ of error coram nobis* ("*writ of error*").) On June 25, 2014, the Appellate Division denied Petitioner's *writ of error* petition upon a finding that he failed to demonstrate that he was denied the effective assistance of appellate counsel. *People v. Oseni*, 118 A.D.3d 1028 (A.D. 2d Dept. 2014). Petitioner sough leave to appeal to the New York Court of Appeals but was denied. *People v. Oseni,* 25 N.Y.3d 952 (2015).

On August 19, 2015, Petitioner filed a motion, pursuant to N.Y. Criminal Procedure Law ("C.P.L.") § 440.10 ("440.10 motion"), in Westchester Supreme Court, seeking to vacate his judgment of conviction on the basis of ineffective assistance of trial counsel purportedly due to counsel's failure to properly advise him of the immigration consequences of his felony guilty plea and counsel's failure to request a Youthful Offender ("YO") adjudication. On February 9, 2016, Westchester Supreme Court denied Petitioner's 440.10 motion upon a finding that Petitioner "was unequivocally and correctly told that his conviction would result in his deportation" and that defense counsel's failure to request YO treatment on the record did not

---

[4] The Appellate Division also determined that Petitioner's claims concerning the propriety of his plea lacked merit.

constitute ineffective assistance of counsel because defense counsel "negotiated an extremely favorable plea," including a reduction in the plea offer from a seven-year prison term to a five-year term. *Id.* at 4-5. Moreover, based upon defense counsel's affidavit, it was "clear" that "neither the Court nor the District Attorney were amenable to a youthful offender adjudication." *Id.* at 5. On June 7, 2016, the Appellate Division denied Petitioner's application for leave to appeal the trial court's denial of his 440.10 motion. (Resp. Aff. at 15.)

On November 7, 2016, Petitioner filed the instant *writ of habeas corpus* petition. (ECF No. 1.) On April 7, 2017, Respondent filed its opposition. (ECF Nos. 9-10.) On June 19, 2017, Petitioner filed his reply. (ECF No. 13.) In his petition, Petitioner seeks to vacate his conviction on three separate grounds of ineffective assistance of counsel: 1. trial counsel's failure to "pursue" YO status on the record; 2. trial counsel's failure to properly advise Petitioner of the possible immigration consequences of his felony plea/conviction; and 3. appellate counsel's failure to purportedly submit a subornation of perjury claim. All three claims were previously reviewed by the state courts and deemed meritless.

## LEGAL STANDARD

**Report & Recommendation**

A magistrate judge may "hear a pretrial matter dispositive of a claim or defense" if so designated by a district court. *See* 28 U.S.C. § 636(b)(1)(B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation, "[w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." *Id.* A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made. *Id.* A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Id.* However, "[t]o accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *accord Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.") (quoting *Small v. Sec. of HHS*, 892 F.2d 15, 16 (2d Cir. 1989)).

To the extent a party makes specific objections to an R&R, those objections must be reviewed *de novo*. 28 U.S.C.§ 636(b)(l); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). In a *de novo* review, a district court must consider the [r]eport, the record, applicable legal authorities, along with Plaintiff's and Defendants objections and replies. *Diaz v. Girdich*, No. 04-cv-5061, 2007 U.S. Dist. LEXIS 4592, at *2 (S.D.N.Y. Jan. 23, 2007) (internal quotation marks omitted). However, to the extent a party makes only general and conclusory objections . . . or simply reiterates the original arguments, the district court will review the report and recommendations strictly for clear error. *Harris v. Burge*, No. 04-cv-5066, 2008 U.S. Dist. LEXIS 22981, at *18 (S.D.N.Y. Mar. 25, 2008). The distinction turns on whether a litigant's claims are clearly aimed at particular findings in the magistrate proposal or are a means to take a 'second bite at the apple by simply re-litigating a prior argument. *Singleton v. Davis*, No. 03-cv-1446, 2007 U.S. Dist. LEXIS 3958, at *2 (S.D.N.Y. Jan. 18, 2007) (citation omitted).

**Writ of Habeas**

"The statutory authority of federal courts to issue habeas corpus relief for persons in state

Page 8 of 21

custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"); *Harrington v. Richter*, 562 U.S. 86, 97 (2011). 28 U.S.C. § 2254 provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). To be granted a *writ of habeas corpus* from a federal district court, a petitioner must fully and carefully comply with the provisions of the AEDPA, 28 U.S.C. § 2254. Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If a petitioner has met these threshold requirements, a federal district court may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with 28 U.S.C. § 2254(d). Generally, a state prisoner has one year from the date his or her conviction becomes final to file a *habeas* petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time," and the petitioner "acted with reasonable diligence throughout the period he [or she] seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

Under the AEDPA, all state court remedies must be exhausted before a federal court may consider a state prisoner's petition for a *writ of habeas corpus*. 28 U.S.C. § 2254(b)(1)(A); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190 - 91 (2d Cir. 1982). Even where a timely and exhausted *habeas* claim is raised, comity and federalism demand that a federal court abstain from review when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of a procedural default" to deny it. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Coleman*, 501 U.S. at 730; *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). A state court decision is "independent" when it "fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 740)). A decision is "adequate" if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

Provided a claim meets all procedural requirements, the federal court must apply the

AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under the AEDPA, an application for a *writ of habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Torres,* 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412 - 13 (2000)). "[A]n 'unreasonable application' of 'clearly established' Supreme Court precedent occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). While it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear. However, it is well-established in the Second Circuit that the objectively unreasonable standard of 28 U.S.C. § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief. *Id.* at 68-69 (cleaned up). Under the second prong of 28 U.S.C. § 2254(d), the factual findings of state courts

are presumed to be correct. *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner

must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**DISCUSSION**

Here, Respondent does not challenge the timeliness of the petition but merely addresses

the merits of the claims asserted in the petition. Petitioner raises three separate claims sounding

in ineffective assistance of counsel: 1. trial counsel's failure to "pursue" YO status on the record;

2. trial counsel's failure to properly advise Petitioner of the possible immigration consequences

of his felony plea/conviction; and 3. appellate counsel's failure to purportedly submit a

subornation of perjury claim.  The Court will address each claim in turn.

**Ineffective Assistance of Trial Counsel**

It is well settled that counsel owes his or her client a duty of loyalty, a duty to avoid

conflicts of interest, and when representing a criminal defendant, counsel's role is to assist the

defendant in his defense within the permissible rules of law. *See generally Strickland v.

Washington*, 466 U.S. 668 (1984). Such assistance includes the duty to advocate the defendant's

cause, to consult with the accused on all matters of importance, and to apprise the defendant of

important developments in the course of the prosecution. *Id.* at 688. The Sixth Amendment to the

United States Constitution "guarantees a defendant the right to have counsel present at all

'critical' stages of the criminal proceedings," *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)

(quoting *United States v. Wade*, 388 U.S. 218, 227-28 (1967)), which includes the entry of a

guilty plea. *See Lee v. United States*, 582 U.S. 357, 363 (2017) ("The Sixth Amendment

guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal

proceeding,' including when he enters a guilty plea"). Similarly, sentencing is considered a

critical stage ofa criminal proceeding. *See Mempa v. Rhay*, 389 U.S. 128 (1967). In regards to a

Page 12 of  21

negotiated plea, counsel has the utmost obligation to advise his or her client of "the advantages and disadvantages of a plea agreement." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). At sentencing, counsel's sage advice and forceful advocacy can serve to minimize a defendant's period of incarceration. *See Glover v. United States,* 531 U.S. 198, 203 (2001).

Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*. *See Missouri v. Frye*, 566 U.S. 134, 140 (2012). In order to reverse a conviction based on ineffective assistance of counsel, there must be a showing that counsel's assistance was constitutionally deficient and that such deficiency prejudiced the defense so as to deprive the defendant of a fair proceeding. *Strickland*, 466 U.S. at 687–693. When evaluating counsel's performance, judicial scrutiny must be highly deferential and must not serve as an opportunity to act as a Monday morning quarterback. *See Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [ ] strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish *Strickland* prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id.* at 694. Specifically in the context of pleas, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

### Youthful Offender

Pursuant to C.P.L. §§ 720.10(1) and (2), a defendant is "eligible" for youthful offender status if he or she was younger than nineteen (19) at the time of the crime, unless the crime is one of several serious felonies excluded by the statute, or unless the defendant has a prior felony conviction or has been adjudicated a youthful offender in a previous case. For some eligible youths convicted of misdemeanors, youthful offender treatment is mandatory. C.P.L. § 720.20(1)(b). For all other eligible defendants, the granting of youthful offender status lies in the sound discretion of the sentencing court. C.P.L. § 720.20(1)(a); *People v. Rudolph*, 21 N.Y.3d 497, 500 (2013). "The granting or denial of youthful offender treatment is analogous to that of sentencing where courts have wide discretion even though there are few or no statutory guidelines for the exercise of such discretion." *United States ex rel. Frasier v. Casscles*, 531 F.2d 645, 647 (2d Cir. 1976) (internal citations omitted). Thus, there is no federal independent constitutional due process right either to youthful offender treatment or to any particular procedure for denying it, provided the state court judge imposed a sentence that was lawful under then prevailing state law. *Id.* at 647-48; *Auyeung v. David*, No. 00 Civ. 1353, 2000 WL 1877036, at *3 (S.D.N.Y. Dec. 26, 2000).

Though not necessarily relevant to the Court's analysis, Petitioner's factual representation concerning his trial counsel's failure to request or advocate for YO status appears disingenuous. A review of the state trial court records suggest that YO status was in fact discussed by Petitioner's trial counsel during Petitioner's initial felony hearing held on February 9, 2009.

Page 14 of 21

(Resp. Mem., Exh. 2, Felony Hearing Transcript at 38-43). Additionally, in an affidavit prepared by Petitioner's trial counsel, Joana Otaiza, Esq. ("Otaiza"), she avers that "from the onset" Petitioner and she were aware that he faced "certain deportation if he were convicted of a crime related to his arrest and tthat from the inception of her representation of Petitioner "getting Youthful Offender treatment was a top priority because such a disposition could "prevent him from being deported." (*See* Resp. Mem. In Oppos., Exh. 1, Otazia Affidavit.)  Otaiza further avers that throughout the pendency of the case she discussed and advocated for "Youthful Offender treatment" with the Court and the prosecution but was unsuccessful. *Id.* Lastly, as a result of her ongoing discussions with the Court, Petitioner was offered a five-year sentence, the minimum statutory permissible sentence, as opposed to the seven-sentence sought by the prosecution, if he pled guilty to the charged crime(s). *Id.*  Otaiza's affidavit further suggests that Petitioner did not automatically qualify for YO status and that such a designation was discretionary. *Id.* The fact that YO status discussions were not entirely on the record is of no moment and does not diminish the fact that they were held. Given these facts, Petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, which the Court determines there were none,  the result of the proceeding would have been different. Accordingly, for all the reasons referenced herein and those delineated in the R&R, Petitioner's ineffective assistance of counsel claim concerning YO status is dismissed.

**Immigration Status**

It is well settled that the "severity of deportation—'the equivalent of banishment or exile'"—underscores how critical it is for trial counsel to inform his client, who is a non-citizen, and will likely face deportation following a felony plea. *Padilla v. Kentucky*, 559 U.S. 356, 373-74 (2010). Thus, counsel's failure to advise his or her client of the potential immigration

consequences of a criminal conviction as a result of a guilty plea constitutes ineffective assistance of counsel. *Id* at 374.

As reflected in the trial court record and as detailed in the R&R, prior to entering his guilty plea, trial counsel advised Petitioner of the potential immigration consequences of his felony plea, and Petitioner acknowledged receiving such advice. (*See* Otaiza Affidavit.) The record further reflects that Petitioner was queried by both the trial court judge and the prosecutor during the plea hearing, and Petitioner represented that he understanding that his felony plea "may result" in his deportation or exclusion from the United States. (*See* Resp. Mem., Exh. 4, Plea Hearing minutes.) Furthermore, in his objection to the R&R, Petitioner acknowledges that he was "aware that the plead could lead to deportation" prior to pleading guilty. (*See* Petitioner's Objections, p. 6.)

In his petition and objection to the R&R, Petitioner appears to suggest that because he was under pressure, was required to make important decisions concerning whether to proceed to trial, had to make trial related decisions, was in the middle of plea discussions, and was concerned with potential immigration consequence of the proposed plea, he was not properly advised. While the Court is cognizant of the heavy burden placed on individuals charged with serious crimes to make difficult decisions concerning whether to accept a plea offer or proceed to trial, as they are entitled to do, such scenario or the existence of such burden does not minimize the fact that the Petitioner was properly advised by trial counsel. Accordingly, upon a review of the record, Petitioner has failed to demonstrate that trial counsel's assistance was constitutionally deficient and that such deficiency prejudiced the defense so as to deprive Petitioner of a fair proceeding. *Strickland*, 466 U.S. at 687-93. For all the reasons referenced herein and those delineated in the R&R, Petitioner's ineffective assistance of counsel claim based on counsel's

purported failure to advise her client of the potential immigration consequences of a criminal conviction as a result of a guilty plea is dismissed.

### Ineffective Appellate Counsel

Petitioner asserts a claim for ineffective assistance of appellate counsel. As previously discussed, the test for ineffective assistance has two necessary prongs: the claimant must establish that his attorney was ineffective;  and the attorney's error resulted in prejudice to the claimant. *See Strickland,* 466 U.S. at 68. An attorney is deemed ineffective when his or her efforts fall " 'below an objective standard of reasonableness.' " *Williams*, 529 U.S. 362, 390–91 (2000) (quoting *Strickland*, 466 U.S. at 688.) A claimant satisfies the prejudice prong by proving that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 391 *(*quoting *Strickland*, 466 U.S. at 694).

Generally, before a petitioner can seek habeas relief he or she must exhaust available state court remedies on a claim. 28 U.S.C. § 2254(b)(1)(A). The failure to first seek state court review may serve as a bar to habeas relief. *Id.*; *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981); *see also  Smith v. Albaugh*, No. 00 CIV.404(RCC)(FM), 2004 WL 434531, at *2 (S.D.N.Y. Mar. 8, 2004) ( Petitioner's failure to exhaust his state court remedies on his habeas claim serves as a procedural defaulted). In order to exhaust a claim for federal habeas purposes, petitioner bears the burden to identify with specificity the issue(s) upon which he or she seeks relief through the state appellate process. *See Jordan v. Lefevre*, 206 F.3d 196, 198–99 (2d Cir. 2000). Petitioner alleges that the prosecution's case relied primarily on the perjured testimony of Officer Lage. Petitioner asserts that appellate counsel was deficient because he failed to allege that Officer Lage committed perjury during several proceedings, the most relevant testimony being the

testimony proffered in the suppression hearing which resulted in the Court's denial of Petitioner's motion to suppress.

As is relevant to Petitioner's claim, the failure to seek and exhaust state court review on issues centering on the credibility of the arresting officer's testimony at a suppression hearing will serve as a bar for federal habeas review. *Tirado v. Walsh*, 168 F. Supp. 2d 162, 167-68 (S.D.N.Y. 2001). A review of the procedural history of Petitioner's state court proceeding reveals that he did exhaust available state court review focusing on the credibility of the  arresting officer's testimony at the suppression hearing. Petitioner sought appellate review of the trial court's determination following the *Mapp/Dunaway* hearing. *See People v. Oseni*, 107 A.D.3d at 829. In his appellate brief, Petitioner asserted that Officer Lage, lacked probable cause to stop his vehicle. (ECF No. 10, Exh. 6, Petitioner's brief.) Petitioner argued that the officer did not possess sufficient facts to support a finding of reasonable suspicion to permit him to stop the vehicle, let alone conduct a warrantless search of the vehicle. *Id* at 23-26. Petitioner did not allege, however, that Officer Lage proffered materially false testimony at the suppression hearing.

A review of the *writ of error*, indicates that Petitioner, for the first time, asserted that Officer Lage proffered materially false testimony during the suppression hearing and appellate counsel failed to present such "meritorious arguments on appellate's behave ...on direct." (Resp. Mem., Exh. 14, Petitioner's *writ of error*.) In addressing Petitioner's contention, the appellate court ruled that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel. *People v. Oseni,* 118 A.D.3d at 1028. In essence, the appellate court determined that Petitioner's claim lacked merit. Leave to appeal to New York State's highest court was denied. *People v Oseni*, 25 N.Y.3d 952.

In his petition, Petitioner alleges that Officer Lage's testimony was "materially false." Among the purported materially false testimony offered was "Officer Lage's initial whereabouts before and after the 911 dispatch, the detailed information provided by the police dispatcher concerning the 911 call as compared to Officer Lage's proffered testimony at the suppression hearing," and discrepancies between Officer Lage's testimony at various proceedings and statements contained within police reports authored by Officer Lage concerning Petitioner's arrest. As suggested by Petitioner, given the importance of Officer Lage's observations and testimony, without which there would be no basis for an arrest, prosecution or conviction, the officer's testimony is suspect and should be considered perjuries.

Addressing Petitioner's contention on the merits, it is the Court's determination that the claim fails. Generally, mere inconsistence or "direct conflict" in testimony does not, without more, constitute perjury. *United States v. Gambino*, 59 F.3d 353, 365 (2d Cir.1995). Issues involving the credibility of a witness(es) in a suppression hearing are considered factual, and "special deference" is accorded to the trial court who is in the best position to make such determinations. *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011)(internal citations). Such deference requires that before a federal court grants habeas relief, it is not sufficient for the court to merely disagree with the state court's credibility determination(s), but the court must determine that the state court findings lacked even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983).

Here, what Petitioner provides as examples of perjured testimony can best be described as inconsistencies. During the suppression hearing, Officer Lage testified that while operating a unmarked vehicle on White Plains Road, Eastchester, N.Y., he observed a dark colored Acura Integra driving slowly in a parking lot area within close proximity to a Blockbuster video store.

Page 19 of 21

At the time of his initial observation, he noticed two occupants in the vehicle. Within a minute or so of making the observation, he received a radio transmission from the police dispatcher regarding an armed robbery, along with a description of a vehicle, which matched the Integra and the direction of fight. A short distance away, Officer Lage stopped the Integra, which was actually occupied by three individuals (inclusive of Petitioner), and recovered incriminating evidence. During the suppression hearing, Officer Lage was questioned at length regarding his observations, the number of occupants he observed in the vehicle, and where he was located prior to and after his initial observation of the Integra. Of significance, Officer Lage provided explanations for the perceived discrepancies in his testimony and police paper work. Based on a review of the record, it is reasonable to conclude that the state court considered all of the proffered testimony when making its credibility determinations and findings of fact.[5]

Other than Petitioner's assertion that the prosecution proffered perjured testimony, there is no evidence to support Petitioner's contention. While this Court is of the opinion that appellate counsel did not have a good faith basis for challenging Petitioner's conviction based on a "subornation of perjury" argument, Petitioner has not demonstrated that but for appellate counsel's failure, there is a reasonable probability that the result of the proceeding would have been different. For all the reasons referenced herein and those delineated in the R&R, Petitioner's ineffective assistance of appellate counsel claim is dismissed.

---

[5] Only two witnesses testified at the suppression hearing: Officer Lage and Sergeant Groccia.

**CONCLUSION**

For these reasons delineated in this opinion and those delineated in MJ Krause's R&R, the petition for a *writ of habeas corpus* is denied. The Clerk of Court is directed to enter judgment accordingly, to close this case and to mail a copy of this Opinion to *pro se* Petitioner at the address on ECF and to show service.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005); *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 225, 259–60 (2d Cir. 1997). The Court certifies pursuant to 18 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: July 18, 2024                          SO ORDERED:
     White Plains, New York

                                       NELSON S. ROMÁN
                               United States District Judge